# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**JOSÉ E. RÍOS COLÓN**, *et al.*,

     Plaintiffs,

     v.

**UNITED STATES OF AMERICA**, *et al.*,

     Defendants.

Civil No. 10-1681 (BJM)

## OPINION AND ORDER

In this action under the Federal Tort Claims Act ("FTCA"), José E. Ríos Colón ("Ríos Colón"), his mother Mayra Ivette Colón González, stepfather Harold López Torres, sister Samaris Ríos Colón, and father José Ríos González (collectively, "plaintiffs") sued the United States of America and the United States Army Corps of Engineers ("the Corps") (collectively, "the Government") for damages arising out of an auto accident that occurred at a detour on a Government highway project. (Docket No. 1, hereinafter "Compl."). Before the court is the Government's motion for summary judgment. (Docket No. 31). Plaintiffs opposed. (Docket No. 35). This case is before me on consent of the parties. (Docket No. 21). For the reasons that follow, the Government's motion is **granted in part.**

## FACTUAL AND PROCEDURAL BACKGROUND

The facts of the case are summarized here after applying Local Rule 56, which structures the presentation of proof at summary judgment.[1]

---

[1] The rule "relieve[s] the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute," CMI Capital Market Inv. v. González-Toro, 520 F.3d 58, 62 (1st Cir. 2008), and prevents parties from "shift[ing] the burden of organizing the evidence presented in a given case to the district court." Mariani-Colón v. Dep't of Homeland Sec., 511 F.3d 216, 219 (1st Cir. 2007). The penalty for noncompliance is severe: "If the party opposing summary judgment fails to comply with Local Rule 56(c), the rule permits the district court to treat the moving party's statement of facts as uncontested." Id. Thus, litigants ignore the rule "at their peril." Id.

A motion for summary judgment must be supported by "a separate, short, and concise statement of material facts, set forth in numbered paragraphs, as to which the moving party contends there is no genuine issue of material fact to be tried." Local Rule 56(b). The opposing party must admit, deny, or qualify the moving party's facts by

### *The Detour of PR-10*

On September 24, 2001, a Project Cooperation Agreement ("Agreement") was reached between the Corps and the Puerto Rico Department of Natural and Environmental Resources ("Corps-DRNA agreement") to build a flood control project on the Rio Grande de Arecibo.  The Agreement did not specify a design or mode of construction.  (Docket No. 30, hereinafter "Def. St.," ¶ 1).  Levees and channels would be built to reduce river flooding in the Municipality of Arecibo.  (Def. St., ¶ 2).  The Corps was responsible for the design, award, and supervision of its contractor.  (Def. St., ¶ 3).  The Corps selected Toledo Electrical Corporation ("Toledo," a non-party) as its contractor.  (Def. St., ¶ 4).  According to Toledo's "Value Engineering Construction Proposal" ("the Proposal"), the project originally called for six 72-inch pipes under the PR-10 highway using a method called microtunneling.  (Def. St., ¶ 6).  As an alternative, Toledo proposed diverting PR-10 to a temporary roadway while the old highway was removed, pipes installed, and the highway reconstructed in its original location.  (Def. St., ¶ 8).  In a September 6, 2007 letter from a contracting officer, the Corps advised Toledo that its submission was tentatively approved.  (Def. St., ¶ 14).  A series of diagrams illustrate plans for the construction, including the placement of warning signs.[2]  (Def. St., ¶ 10).  The PR-10 detour opened on

---

reference to each numbered paragraph, and may make a separately numbered statement of material facts. Local Rule 56(c).  The moving party may reply and admit, deny, or qualify the opponent's newly-stated facts, again in a separate statement and by reference to each numbered paragraph.  Local Rule 56(d). Any facts supported by citation to record evidence and not properly controverted as described by the rule are deemed admitted. Local Rule 56(e).

[2] The Government offers the plans to show that Toledo "built and placed a number of warning signs," but as plaintiffs correctly note, the existence of plans is not evidence that the plans were actually carried out.  (See Def. St., ¶ 10; Docket No. 30-6). Additionally, the Government argues that the detour plans were "evaluated and approved by" the Puerto Rico Department of Transportation and Public Works ("DTOP"), and that "absent said approval the construction mode would have reverted to micro tunneling." (Def. St., ¶ 9).  However, the referenced exhibit is a mix of untranslated documents, design plans, and other material.  (See Docket No. 30-5).  The Spanish-language documents are not admissible as evidence in this court, Local Rule 5(g), and the remaining documents do not support the Government's assertion about DTOP review and approval.

November 2, 2007.[3]  (Def. St., ¶ 11).  Prior to the detour's construction, PR-10's posted speed

limit was 50 miles per hour.  (Def. St., ¶ 5).

### Ríos Colón's Accident

At about 10:00 a.m. on December 20, 2007, while driving on PR-10 from Arecibo to

Utuado at about 50 miles per hour, Ríos Colón hit a concrete barrier at the detour.  (Def. St., ¶¶

16, 18-19; Pl. St., ¶ 1).  Ríos Colón was 20 years old at the time of the accident.  (Def. St., ¶ 15;

Pl. St., ¶ 1). He testified that he was already going to hit the barrier by the time he tried to brake,

that he was not familiar with or aware of the construction, and that sunlight had blinded him.

(Def. St., ¶ 19; Pl. St., ¶¶ 2, 4).  Ríos Colón explained that because of strong sunlight, he was

trying to drive by following lines on the road, but that the markings led him into the barrier.  (Pl.

St., ¶ 3).  Ríos Colón testified that he was not familiar with PR-10 at the time of the accident.

(Def. St., ¶ 17).  The vehicle was destroyed, and Ríos Colón was stuck inside the vehicle.  (Pl.

St., ¶ 5).  He lost consciousness and went into a coma.  (Def. St., ¶ 20).  Ríos Colón testified that

he was eventually freed; he received blood transfusions and was transported by helicopter to

Centro Médico, where he spent three months in trauma and underwent over sixteen surgeries.

His family was told to expect him to die.[4]  (Pl. St., ¶¶ 6-9).

---

[3] The Government cites a 21-page collection of daily construction logs for the proposition that Toledo
placed various safety devices around and along the detour.  (Def. St., ¶¶ 11-13; Docket No. 30-7).  The Government
never explains what portions of the logs support this, nor does it offer any other evidence interpreting the logs or
otherwise relating the placement of these devices.  By like token, the Government submits, unadorned, a CD
containing 56 photographs of the accident scene.  The Government never explains what any particular photograph is
supposed to demonstrate, and only makes the feeble request "that the CD be made part of the Motion for Summary
Judgment."  (Docket No. 32).  The sole allusion to the photos appears on the penultimate page of its motion, where
it refers to the photos *en masse* as "conclusive" evidence that Ríos Colón was negligent.  (See Docket No. 31, p. 14).
   Rather than attempt to excavate those portions of the record that conceivably support the Government's
positions, these factual contentions will be disregarded.  Building up arguments and marshaling evidence is the role
of counsel, and the Assistant United States Attorney cannot expect the court to do her job.  See United States v.
Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (likening arguments without support to bones without flesh); see also Local
Rule 56(e) (requiring pinpoint citations in statement of facts).
[4] Plaintiffs' statement of facts supplements Ríos Colón's testimony with details appearing nowhere in the
cited pages of his deposition, and which rather seem to be paraphrased from the complaint.  (Compare Pl. St. ¶¶ 6-9
with Compl., ¶¶ 20-23).  These details would not affect the analysis.  Nonetheless, since bare motions and pleadings
are not evidence, they have not been considered.

Juan Carlos Vidot-Hernández ("Vidot"), an officer of the Puerto Rico Police, was traveling to work in the opposite direction on PR-10 that same morning.  (Def. St., ¶¶ 21-22). Vidot testified that he traveled the route every day, and that the PR-10 detour had "double lines," "some safety rails," and "some signs."  (Def. St., ¶ 25).  Vidot recalls that in the direction from Arecibo to Utuado, there were "some signs" on both sides of the highway leading up to the detour.  (Def. St., ¶ 26).  Vidot recalled that the signs indicated that "there was a detour further ahead" and indicating a speed.  (Docket No. 30-11, p. 40).  While driving, he attempted to call his wife, but dropped his phone on the car floor and slowed down to look for it; when he looked up again, he saw a car fly overhead.  Vidot slammed on the brakes and ducked under his dashboard.  When he sat up, he saw a vehicle lying completely destroyed in front of him.  (Def. St., ¶ 23).  Upon examining the scene, Vidot concluded that the car had been traveling in the opposite direction to him.  (Def. St., ¶ 24).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material only if it "might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and "[a] 'genuine' issue is one that could be resolved in favor of either party."  Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004).  The court does not weigh the facts, but instead ascertains whether the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Leary v. Dalton, 58 F.3d 748, 751 (1st Cir. 1995).

---

But crucially, plaintiffs' summary of "Plaintiff's Exhibit I (Expert Report)" must also be disregarded.  (See Pl. St., ¶¶ 10-11).  The report is written in Spanish and lacks a certified translation; thus, the only portions that may be considered as evidence are some photos, charts, and documents in an appendix to the report. To date, plaintiffs have neither furnished a translation nor sought leave to do so; thus, the evidence is inadmissible.  Local Rule 5(g).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [evidence] . . . which it believes demonstrate the absence of a genuine issue of material fact." Crawford-El v. Britton, 523 U.S. 574, 600 n.22 (1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)); Fed. R. Civ. P. 56(c)(1).  Once this threshold is met, the burden shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). However, the court draws inferences and evaluates facts "in the light most favorable to the nonmoving party," Leary, 58 F.3d at 751, and an evaluating court may not "superimpose [its] own ideas of probability and likelihood (no matter how reasonable those ideas may be) upon the facts of the record." Greenburg v. P.R. Maritime Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987).  Nonetheless, summary judgment is appropriate where the nonmoving party rests entirely upon "conclusory allegations, improbable inferences, and unsupported speculation" on any essential element of the claim. Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

## DISCUSSION

Plaintiffs seek compensation for the medical expenses, pain, and emotional distress they have borne as a result of the accident.  The Government argues that all claims should be dismissed because (1) the discretionary function exception to the FTCA applies, and (2) Ríos Colón's negligence was the superseding cause of the accident.  I consider each position in turn.

## I.    The Discretionary Function Exception to the FTCA

The FTCA, subject to its exceptions, waives the United States' sovereign immunity for tort claims. Carroll v. United States, 661 F.3d 87, 93 (1st Cir. 2011).  The scales are "tilted towards the government's claim of immunity," and the FTCA "must be construed strictly in favor

of the federal government."   Id. (citation and quotation marks omitted).   At issue here is the discretionary function exception, which bars "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."   28 U.S.C. § 2680(a); United States v. Gaubert, 499 U.S. 315, 322 (1991).   Courts follow a three-step analysis that asks (1) what conduct is being challenged, (2) whether it "can fairly be described as discretionary," and (3) whether the discretionary conduct "is actually or potentially influenced by policy considerations."   Fothergill v. United States, 566 F.3d 248, 252 (1st Cir. 2009).

As a threshold matter, plaintiffs cryptically argue that "negligence in the control and supervision at the site of construction on a daily basis, over the performance of the contract, are the only requirements for the Government to be responsible for the tortious acts of its Contractors under [the] FTCA. . . . Since Contractors are not considered employees of the Government, the Discretionary Function Exception does not apply in this case, only the control and supervision requirements [do]."   (Docket No. 35, ¶¶ 38-39).   Plaintiffs offer no further explanation of their position, nor authority in support of it.   I understand them to argue that Toledo was not a "federal agency or employee of the Government" protected by the discretionary function exception, but that the Government is nonetheless liable for the work done by Toledo. If plaintiffs have a more nuanced position, their failure to explain it has waived it.   See Velásquez Rodríguez v. Mun'y of San Juan, 659 F.3d 168, 175 (1st Cir. 2011) ("Judges are not mind-readers, so parties must spell out their issues clearly, highlighting the relevant facts and analyzing on-point authority.").   As it stands, the argument fails on its own terms.   The FTCA *only* confers jurisdiction over claims for damages caused by "the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment . . . ."   28

U.S.C. § 1346(b)(1).  To the extent plaintiffs are arguing that Toledo and its employees were *not* "employees of the Government" to avoid the discretionary function analysis, they are arguing that this court lacks jurisdiction over those claims.  But to the extent the plaintiffs (necessarily) concede that they only seek damages for the acts of a "Federal agency or employee of the government," the discretionary function exception applies.  Therefore, I proceed through the three-step analysis of that exception.

### A.      Challenged Conduct

At the first step, a court must cut through the plaintiff's characterization of the Government's conduct, and identify the "nature and quality of the harm-producing conduct." Fothergill, 566 F.3d at 252-53 (citing Berkovitz v. United States, 486 U.S. 531, 536 (1988)). *Fothergill* illustrates this task.  The plaintiffs in that case were post office customers, injured when a car drove into the building.  Id. at 250.  They sued the United States, alleging "negligence in designing and maintaining the premises . . . ."  Id. at 252 (quoting complaint).  In identifying the conduct being challenged, the Court of Appeals explained that while the issue may be characterized as either "improper design" or "failure to furnish a safe place," "choosing between these labels would be a pointless exercise" because "regardless of how the conduct is denominated, the focus of the plaintiffs' complaints is on the Postal Service's decisionmaking with respect to the implementation (or eschewal) of safety measures in connection with its operation of the post office."  Id. at 252-53.

Here, the complaint attaches a variety of labels for the Government's alleged wrongdoing: that it approved the detour's proposal, design, and construction; that it operated and maintained the detour; that it exercised "exclusive care and supervision" over the detour, and so forth.  (See Compl., ¶¶ 29-44).  But for analyzing the discretionary function exception, plaintiffs' attacks collapse to two points of Government decisionmaking:  (1) that the Government chose to

open a detour that was dangerous *by design*, and (2) that the Government chose to open a detour

that did not *conform to its design*, specifically with respect to warning signs and lane striping.

Therefore, I assess steps two and three with respect to each challenged act.

### B.   Discretion

Courts next consider whether the challenged Government conduct was "left to the actor's

choice."  Fothergill, 566 F.3d at 253.  "Conduct does not involve an element of judgment or

choice if a 'federal statute, regulation, or policy *specifically* prescribes a course of action for an

employee to follow . . . .'"  Sánchez ex rel. D.R.-S. v. United States, 671 F.3d 86, 97 (1st Cir.

2012) (quoting Gaubert, 499 U.S. at 322) (emphasis added in original).  Importantly, this circuit

rejects FTCA claims where plaintiffs only invoke "vague, permissive, or unidentified

requirements for government conduct."  See id. (collecting cases).  Moreover, any identified

mandatory directives "must be 'directly applicable' to the challenged conduct."  Sanchez, 671

F.3d at 97 (quoting Muñiz-Rivera v. United States, 326 F.3d 8, 16 (1st Cir. 2003)).

Here, plaintiffs argue that while the Government's decision to adopt the detour plan may

be discretionary, "there is no discretion in executing the safety regulations and guides for the

kind of construction defendant was performing at the time of the accident."  (Docket No. 35, ¶

37).  The complaint similarly mentions "the rules and standards of the labeling and marking

required for this kind of work."  (Compl., ¶ 32).  These statements alone are precisely the kind of

nebulous reference that this circuit has uniformly rejected as insufficient.  Nothing else in the

nature of a statute, regulation, or policy is identified in the plaintiffs' complaint, opposition to

summary judgment, or statement of material facts.  Turning to the evidence, plaintiffs generally

cite the plans furnished by the Government, but explain no further.  Upon examining those plans,

the most obviously relevant portion is a section marked "IMPORTANT NOTES" repeated on

several of the drawings, which states:

**Ríos Colón v. United States**                                                Page 9
Civil No. 10-1681 (BJM) – Opinion and Order

```
PLASTIC DRUMS SHALL BE SPACED AT NO MORE THAN 5.00 METERS

. . .

THE CONTRACTOR SHALL READ THE SPECIFICATION NUMBER 638
"MAINTENANCE AND PROTECTION OF TRAFFIC" PAGES 537 TO 550
OF THE STANDARD SPECIFICATIONS MANUAL OF THE PUERTO RICO
HIGHWAY AND TRANSPORTATION AUTHORITY.

THE CONTRACTOR SHALL UTILIZE THE NEW "STANDARD MODELS" FOR
SIGNS AND OTHER CONTROL DEVICES DETAILS.
```

(Docket No. 30-6, p. 2, 3, 5-9).  But neither the Standard Specifications Manual nor the Standard

Models are evident in the record, making it impossible to ascertain what these standards and

models say—and importantly, whether they are mandatory, rather than aspirational.

Plaintiffs also argue that the Corps-DRNA agreement cabined the Government's

discretion.  (Docket No. 35, ¶¶ 41-44).  But this position fails for the same reason:  agreements to

follow "the applicable laws" (id., ¶ 41), to coordinate the project (id., ¶ 42), to permit the

Government to enter and inspect DRNA property (id., ¶ 43), and for DRNA to indemnify the

Government (id., ¶ 44), do not specifically mandate or constrain the action at issue here.

For these reasons, plaintiffs have failed to demonstrate that the choices that led to the

detour's condition on December 20, 2007—whether the selected design was flawed, or whether a

non-compliant detour was opened—were removed from executive discretion.  It is therefore

necessary to proceed to the final step of the discretionary function analysis.

**C.      Susceptibility to Policy Analysis**

At this last stage, courts ask "whether the judgment at issue 'is of the kind that the

discretionary function exception was designed to shield.'"  Carroll, 661 F.3d at 104 (quoting

Berkovitz, 486 U.S. at 536); see Gaubert, 499 U.S. at 324-25 (plaintiff must show conduct is not

"grounded in the policy of the regulatory regime" granting discretion).  In the First Circuit,

plaintiffs have the burden of showing "that discretionary conduct was not policy-driven and,

hence, falls outside the exception." Carroll, 661 F.3d at 100 n.15 (noting circuit split regarding

burden). Moreover, it is not enough to show that no analysis *actually* occurred; rather, a plaintiff

must show that no policy-driven judgment *could* have been made. Fothergill, 566 F.3d at 253

(citing Gaubert, 499 U.S. at 324-25). Of course, "[v]irtually any government action can be

traced back to a policy decision of some kind, but an attenuated tie is not enough to show that

conduct is grounded in policy." Shansky v. United States, 164 F.3d 688, 693 (1st Cir. 1999).

Therefore, a careful, case-specific assessment is required; for instance, there is no categorical

"safety exception." Id. Yet there is a "category of objective professional judgments that, without

more, are not readily amenable to policy analysis." Id. at 694 (citing Berkovitz, 486 U.S. at

545). In such circumstances, "the operative distinction is the one between a judgment that

embodies a professional assessment undertaken pursuant to a policy of settled priorities and a

fully discretionary judgment that balances incommensurable values in order to establish those

priorities." Id. at 694 & n.5 (collecting cases).

Here, the Government defends the rather unassailable policymaking character of its

choice of detour design. Plaintiffs suggest that even so, the *implementation* of any chosen safety

measures could not have been policy-driven. (See Docket No. 35, ¶ 37) ("[E]ven though

Defendant alleges that the decision to change the mode of construction was a discretionary

decision based on policy judgment, that decision alone is not the reason why the present claim

was [*sic*] ensued. . . . Said detour was not constructed to the specifications of the plans . . . .

There is no discretion in executing the safety regulations and guides for [this] kind of

construction . . . ."). Thus, while conceding the Government's analysis of its choice of design

(the first of the challenged actions), plaintiffs nonetheless maintain that operating a detour that

failed to meet that design (the second) was not in the nature of policymaking. The construction

plans they highlight, *supra*, lend firmer support to this position: if the Government endorsed the

safety measures identified in those plans, then policy judgments have already been made, leaving only the "professional assessment" of whether the plans had been carried out in accordance with the selected standard.   Cf. Carroll, 661 F.3d at 104.   Ríos Colón's deposition testimony suggesting the absence of signs and improper lane striping at least raises a triable question of whether this was actually so.[5]  (See Pl. St., ¶¶ 2-4).  Moreover, the Government deigned not to contest this analysis in a reply, and no alternate analysis is self-evident.

Thus, on this shaky showing, the presumption of policy-making as to the opening of a defective detour is dispelled for now, and only claims arising out of the Government's choice of design must be dismissed.   At risk of restating what should be obvious, any more decisive analysis of the court's jurisdiction has been hampered by both sides' oversights, creating substantial uncertainty in proceeding to trial.  But bedrock principles dictate that "parties do not possess the power to confer subject matter jurisdiction on a federal court by concession," and federal courts "have an affirmative obligation to examine jurisdictional concerns on their own initiative."   See, e.g., Irving v. United States, 162 F.3d 154, 160-61 & n.4 (1st Cir. 1998) (en banc) (applying discretionary function exception regardless of whether it was waived on appeal). Therefore, the parties are forewarned that if the Government establishes—be it belatedly, or even inadvertently—that *any* exception to the FTCA properly applies, dismissal will lie without regard to the case's posture, its merits, or the public and private time and expense that will have been wasted.  See, e.g., Bolduc v. United States, 402 F.3d 50, 54-55 (1st Cir. 2005) (reviewing scope of FTCA jurisdiction on appeal from post-trial merits judgment).   The parties are strongly encouraged to hedge against this uncertainty by reaching a compromise of their own accord.

---

[5] As the discussion in the next section shows, factual disputes about the condition of PR-10's striping and signage affect the substantive elements of negligence under Puerto Rico law.  Thus, they present "intertwined" merits questions, and are not amenable to partial jurisdictional fact-finding.  Cf. González v. United States, 284 F.3d 281, 287-88 (1st Cir. 2002) (rejecting argument that 12(b)(1) motion should have been treated as one for summary judgment because issues were not so "intertwined" as to reach the merits).

## II.    Causation

Alternatively, the Government argues that Ríos Colón's own negligence, rather than any problem with the detour, was the sole proximate cause of his accident.  (Docket No. 31, p. 13-14).   In an FTCA case, the place of injury provides the law of substantive liability. Wojciechowicz v. United States, 582 F.3d 57, 66 (1st Cir. 2009).   Under Puerto Rico law, the elements of negligence are (1) an injury, (2) a breach of duty, and (3) proximate causation. Vásquez-Filippetti v. Banco Popular de P.R., 504 F.3d 43, 49 (1st Cir. 2007).   Breach of duty requires the existence of a duty (in general, "that one must act as would a prudent and reasonable person under the circumstances") and its breach.   Id.   Proximate cause depends on (a) actual cause and (b) foreseeability.   Id. at 49 n.6.   As a result, "intervening causes can break the chain of causation *if they are not foreseeable*."   Malave-Felix v. Volvo Car Corp., 946 F.2d 967, 972 (1st Cir. 1991) (citing Gines v. P.R. Aqueduct & Sewer Auth., 86 P.R.R. 490, 495 (1962)) (emphasis added); Echevarria v. Robinson Helicopter Co., 824 F. Supp. 2d 275, 282 (D.P.R. 2011).   Stated conversely, "[a] negligent defendant will not be relieved of liability by an intervening cause that was reasonably foreseeable, even if the intervening force may have 'directly' caused the harm." Marshall v. Perez Arzuaga, 828 F.2d 845, 848 (1st Cir. 1987) (citing Nuñez Méndez v. P.R. Water Res. Auth., 93 P.R.R. 168, 178 (1966)).   And "[t]he rule of foreseeability does not require that the precise risk or exact result that occurred should have been foreseen; rather, the essential factor is that a person should have foreseen consequences of the general kind that occurred." Malave-Felix, 946 F.2d at 972 (citing Gines, 86 P.R.R. at 495).

Plaintiffs miss the mark by invoking the rule of "concurrent imprudence," which only commands apportionment of liability among joint tortfeasors.  Here, in contrast, the Government is challenging the very existence of proximate cause (and thus, of any "concurrent imprudence") in plaintiffs' theory of the case.  See also Santiago v. Becton Dickinson & Co., 571 F. Supp. 904,

911-916 (D.P.R. 1983) (distinguishing concurrent imprudence from superseding intervening causation).  This position therefore falls flat.

But to prevail on summary judgment, the Government must show that no rational fact-finder could conclude that a car hitting the concrete barrier in Ríos Colón's circumstances was foreseeable, and that there are no determinative questions of fact to be resolved.  It has not done so here.  Importantly, Ríos Colón's deposition testimony, if fully credited, would tend to show that the lane striping led into the barrier, and that at least in certain sunlight conditions, the detour signs (if any) were not noticeable by a driver unfamiliar with the area.  Viewed most favorably to plaintiffs' claims, it would be permissible—though by no means mandatory—to find that collisions at speed were foreseeable.  Because the record leaves room for fact-finding and credibility judgments, summary judgment is not proper.  See Marshall, 828 F.2d at 848-49 & n.6 (in Puerto Rico bench trials, proximate cause requires consideration of "all circumstances," and in federal diversity the issue is an "evaluative determination[]" for the jury rather than the judge).

The Government's mention of Rubín Vda. de Vila v. Guerra Mondragón, 7 P.R. Offic. Trans. 463 (1978), does not alter the analysis.  There, following an auto-pedestrian accident that caused the death of a 65-year-old man, his widow and son sued the vehicle's driver, owner, and insurer.  Id. at 463-64.  The trial court found that the victim "suddenly rushed to cross the avenue from north to south, in a place where there was no crosswalk and where, due to a semicurve, visibility was limited west-ward, from where traffic was coming."  Id. at 465.  The driver of the car was driving at the speed limit.  The trial judge dismissed the case, finding the driver was not negligent.  Id.  The Supreme Court found that the findings about the victim's conduct were not supported by the evidence, and reanalyzed the driver's conduct:

> The fact that a speed limit is fixed by law on a particular zone does not mean that a driver is authorized to drive at that speed at all times. According to the policeman's testimony, it had been raining. There was a semicurve which

obstructed the visibility of the left lane, on which [the driver] was driving 30 to 40 feet ahead. The sunglare was blinding her. *In view of the foregoing circumstances it was a negligent act which gave rise to the accident to keep driving at 25 M.P.H.*

Id. at 468-69 (emphasis added).  After reviewing the Vehicle and Traffic Law then in effect, the Court held defendants were 75 percent liable, and remanded for a final calculation of damages. Id. at 469-70.   In short, even if it *is* "negligence to continue driving at the speed limit fixed by law, when the sun glare [*sic*] is blinding the driver," (Docket No. 31, p. 14), the Supreme Court merely apportioned damages, and importantly, did *not* hold that a car driver's negligence forecloses consideration of any other "imprudence."

In an afterthought, the Government also asserts without explanation that "[n]o warning signs would have prevented the accident."  (Docket No. 31, p. 14).  Construed *very* generously, this might challenge the "actual cause" element of causation, though the reference is so terse and buried in the Government's motion that it might be unfair to charge plaintiffs with the burden of rebutting it.  See Crawford-El, 523 U.S. at 600 & n.22 (movant must first flesh out grounds for summary judgment).  Regardless, the same factual questions about the other circumstances of the accident (e.g., striping) affect this question, precluding summary judgment.

## CONCLUSION

For the foregoing reasons the Government's motion for summary judgment is **GRANTED IN PART.**  Plaintiffs' claims arising out of the Government's design choices in the PR-10 detour are **DISMISSED.**  The motion for summary judgment on plaintiffs' other claims is **DENIED.**

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 31st day of August, 2012.

*S/Bruce J. McGiverin*
BRUCE J. McGIVERIN
United States Magistrate Judge